[Crim. No. 13362. Fourth Dist., Div. One. Nov. 17, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JAVIER C. MACIAS, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Victoria Sleeth, Lynda Romero and Jeffrey Stuetz, Deputy State Public Defenders, and Mary M. Howell for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—Javier C. Macias appeals his judgment of conviction for attempted murder (Pen. Code, §§ 187, 664),[1] possessing a knife in an honor camp (§ 4574), escape from an honor camp (§ 4532, subd. (a)), and findings he per-

---

[1]All statutory references are to the Penal Code unless otherwise specified.

sonally inflicted great bodily injury (§ 12022.7) and used a dangerous or deadly weapon (§ 12022, subd. (b)) while committing the attempted murder and escape. He incorrectly contends his consecutive sentence for escape constitutes improper multiple punishment, and meritlessly claims his sentence for attempted murder unconstitutionally denies him due process and equal protection and constitutes cruel and/or unusual punishment, because his sentence for attempted *second* degree murder is identical to that imposed on one convicted of attempted *first* degree murder.

### Factual and Procedural Background

On December 7, 1980, the victim, a new probation officer at Barrett Honor Camp, talked to inmate Macias on several occasions. Shortly before 10 p.m., she went to her car to get her suitcase. When she refused Macias' order to get in her car, he knocked her to the ground, sat on her and started punching her in the abdomen. To prevent her resistance he threatened her with a butter knife he had filed to a sharp point. Believing the butter knife was harmless, she told him he could not do anything with it. Macias responded, "Yes, I can," striking her face with the knife, lacerating her left cheek. He continued beating her abdomen and stabbed her in the midsection. He tried again to get her to get into the car. She promised to do so if he would let her up but instead escaped, running and screaming for help. Macias escaped from the honor camp on foot.

The victim suffered massive blood loss from the stab wound puncturing her colon and small bowel, cutting a major vein, and would have died if emergency procedures had been delayed another 15 minutes.

Probation was denied and Macias was sentenced to fourteen and one-third years; an aggravated term of nine years for attempted murder, a three-year enhancement for inflicting great bodily injury, and two and one-third years consecutive for knife possession and escape.

### Section 654 Does Not Preclude Consecutive Sentencing on the Escape Conviction

Macias claims his sentences on both the attempted murder and the escape counts violates section 654, because both were incident to one objective (i.e., escape).

"Section 654 does not preclude multiple convictions but only multiple punishments for a single act or indivisible course of conduct." (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) Consequently, section 654 applies where a course of conduct violates more than one statute and comprises an indivisible transaction punishable under more than one

statute. (*People* v. *Guevara* (1979) 88 Cal.App.3d 86, 91 [151 Cal.Rptr. 511].) "The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]; *People* v. *Miller, supra,* 18 Cal.3d 873, 885.) "The question of whether the acts of which defendant has been convicted constitute an indivisible course of conduct is primarily a factual determination, made by the trial court on the basis of its findings concerning the defendant's intent and objective in committing the acts. This determination will not be reversed on appeal unless unsupported by the evidence presented at trial." (*People* v. *Lee* (1980) 110 Cal.App.3d 774, 786 [168 Cal.Rptr. 231]; see *People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 815-816 [177 Cal.Rptr. 627]; *People* v. *Murphy* (1980) 111 Cal.App.3d 207, 213 [168 Cal.Rptr. 423].)

 The sentencing judge found the cited crimes were committed independent of each other, explaining: "The defendant testified he planned for the escape, intended to kidnap the victim. He never planned to hurt her. It is obvious that the victim became angry, would not cooperate, and he at that time formed the intent to kill her and did so escape on foot from honor camp. Though the crimes overlapped, the objective of each crime was separate, and it would appear to this court that the intent was formed at separate times."

These findings are supported by substantial evidence. Concededly, Macias' sole original criminal objective was to escape by forcing the victim to drive him from the honor camp in her automobile (Macias did not know how to drive). When she refused to cooperate, Macias attacked her and after a struggle used his knife with the intent, as the jury found, to murder her.[2] Stabbing the victim in the abdomen with the knife was patently inconsistent with his escape plan; for, if she was either gravely disabled or dead, she could not help Macias escape. This intentional deliberate stabbing supports the implied jury finding Macias entertained a new criminal intent and an independent objective at the time of the knifing but, upon finding her merely disabled, returned to his original criminal objective and once again attempted to have her drive him from the scene. This revived plan was foiled when she escaped. These multiple criminal objectives were independent of, not merely incidental to, each other and properly punishable as independent violations committed in pursuit of separate objectives even though sharing common acts or an otherwise indivisible course of conduct. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905]; *People* v. *Guevara, supra,* 88 Cal.App.3d 86, 91.)

---

[2]Macias does not challenge the sufficiency of the evidence underlying his conviction of attempted murder.

*Macias' Sentence for Attempted Murder
Is Constitutionally Sound*

Macias next contends his sentence for attempted murder denies him constitutional due process and equal protection and constitutes cruel and/or unusual punishment because his conviction of attempted *second* degree murder carries the identical term as one convicted of attempted *first* degree murder.

Finding no circumstances in mitigation and enumerating several circumstances in aggravation, the trial court sentenced Macias to an upper term of nine years for attempted murder pursuant to sections 190 and 664. Section 664 provides in pertinent part: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempts, as follows:

". . . . . . . . . . . . . . . . . . . . . . . . . .

"1. If the offense so attempted is punishable by imprisonment in the state prison, the person guilty of such attempt is punishable by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; provided, however, that if the crime attempted is one in which the maximum sentence is life imprisonment or death the person guilty of such attempt shall be punishable by imprisonment in the state prison for a term of five, seven, or nine years.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"4. If a crime is divided into degrees, an attempt to commit the crime may be of any such degree, and the punishment for such an attempt shall be determined as provided by this section." Pursuant to section 190, the maximum penalty for both first and second degree murder, in the absence of a death penalty, is life imprisonment. Consequently, the penalty for attempted murder in either degree is a term of five, seven or nine years.

Preliminarily, we note the jury was neither instructed on the distinction between first and second degree murder nor required to specifiy a degree in rendering the verdict, since the matter was submitted on an attempted second degree theory. Therefore, section 1157 applies: " 'Whenever a defendant is convicted of a crime which is distinguished into degrees, the jury . . . must find the degree . . . . . Upon the failure of the jury . . . [to do so] . . . the degree of the crime of which the defendant is guilty, shall be deemed to be of the lesser degree.' " However, since the punishment for attempted murder is five, seven or nine years, regardless of whether the murder attempted was of

the first or second degree, the crime of attempted murder is not in fact divided into degrees. (Compare *People* v. *Wein* (1977) 69 Cal.App.3d 79, 93 [137 Cal.Rptr. 814].)

## Equal Protection

 Macias argues his sentence for attempted murder violates equal protection of the law because the Legislature and the electorate have treated some members of the class (all those convicted of second degree crimes) differently than others.[3]

 "The basic rule of equal protection is that those persons similarly situated with respect to the legitimate purpose of the law must receive like treatment." (*People* v. *Karsai* (1982) 131 Cal.App.3d 224, 243-244 [182 Cal.Rptr. 406].) "The 'equal protection' provisions of the federal and state Constitutions protect only those persons similarly situated from invidiously disparate treatment. [Citations.]" (*People* v. *Superior Court (Hanson)* (1980) 110 Cal. App.3d 396, 400 [168 Cal.Rptr. 21].) Accordingly, "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) Justice Frankfurter explained: "The Constitution does not

---

[3]Before the enactment of the determinate sentencing law in 1976, the punishment for first degree murder (insofar as it is pertinent here) was life imprisonment, while the punishment for second degree murder was five years to life. At that time, section 664 provided that imprisonment for up to 20 years was to be the punishment for an attempt to commit any crime which carried a potential life sentence. Thus, attempted first and second degree murder were punished in the same manner. (See *People* v. *Wein, supra,* 69 Cal.App.3d 79, 93.) However, after the determinate sentencing law was passed, section 190 was amended to make the punishment for first degree murder a term of life imprisonment in the absence of a death penalty, and the punishment for second degree murder a determinate term of five, six or seven years. Section 664 was also amended to provide determinate terms for all attempts, including one-half the determinate term prescribed for the completed crime or, if the maximum term for the completed crime was life, a determinate term of five, six or seven years. Effective July 1, 1977, the punishment for attempted first degree murder was five, six or seven years, while the punishment for attempted second degree murder was two and a half, three, or three and a half years. Then in 1978, the Legislature added subdivision 4 to section 664 for purposes of clarification providing that, if the crime is divided into degrees, an attempt to commit that crime may be of any such degree as that punishment for such an attempt shall be determined as provided by section 664. Also in 1978, the Legislature amended section 664 to provide a punishment for one-half the determinate term for the completed crime or five, seven or nine years if the completed crime carried a maximum life sentence, and also section 190 to provide an increase in the term for second degree murder from five, six or seven years to five, seven or eleven years. This latter amendment, however, never became effective, because on November 7, 1978, the California electorate by initiative changed the punishment for first degree murder to 25 years to life and for second degree murder to 15 years to life. Since the initiative was silent regarding the punishment for attempted murders, section 664, as amended, remained the law unchanged by the initiative. Consequently, the statutory scheme once again provides that a defendant convicted of attempted first degree murder and a defendant convicted of attempted second degree murder face identical punishment.

require things which are different in fact or opinion to be treated in law as though they were the same." (*Tigner* v. *Texas* (1940) 310 U.S. 141, 147 [84 L.Ed. 1124, 1128, 60 S.Ct. 879, 130 A.L.R. 1321]; *In re Eric J., supra,* 25 Cal.3d 522, 530.)

██ Macias' argument fails because he has chosen a class too broad for equal protection analysis (all second degree offenders). Persons convicted of *different* crimes are not similarly situated for equal protection purposes. (*Smith* v. *Municipal Court* (1978) 78 Cal.App.3d 592, 601-602 [144 Cal.Rptr. 504]; *People* v. *Hughes* (1980) 112 Cal.App.3d 452, 459 [169 Cal.Rptr. 364]; *People* v. *Gayther* (1980) 110 Cal.App.3d 79, 91 [167 Cal.Rptr. 700].) More specifically, as a person convicted of attempted second degree murder, he is not similarly situated with a person convicted of second degree murder because of result and completion of the crime, nor is he similarly situated with an individual who has been convicted of second degree burglary or an attempt thereof. These crimes differ from each other in many ways, "including the reasons and motive of the criminal, the outrage and harm to the victim, and the potential for danger to the victim and society in general." (*People* v. *Karsai, supra,* 131 Cal.App.3d 224, 244.) Moreover, the degrees of burglary are related to the increased potential or risk of harm to the public (see § 460), while the degrees in murder are *more* related to the culpability or the state of mind of the perpetrator (i.e., the requirement of premeditation and deliberation in a finding of first degree murder).

As a criminal facing sentencing, Macias falls within several classifications—the broadest of which is: all convicted felons. In descending order of breadth, relevant sub-classes are: (A) all felons convicted of attempting a felony divided into degrees (limited only to murderers and burglars); (B) all attempted second degree murderers and burglars; (C) all persons convicted of attempting to commit a felony, the completion of which would result in an indeterminate sentence of life imprisonment (first degree murderers, second degree murderers and various types of kidnappers, including nonforceable kidnaps for the purpose of robbery, or ransom); (D) all persons convicted of attempting murder; (E) all persons convicted of attempting second degree murder; (F) all persons convicted of second degree felonies carrying an indeterminate life sentence.

Macias has argued his relevant class is (A). However, the facial legislative purpose of section 664 is to establish standards by which to sentence all persons whose attempts to commit a crime fall short of success, where no specific sentence is otherwise prescribed. Consistent with that purpose we perceive the correct class to be analyzed to be (C), all persons convicted of attempting to commit a felony which, if successful, could result in an indeterminate maximum sentence of life imprisonment.

Historically the Legislature has punished attempts by reference to the maximum punishment mandated for the underlying substantive crime without regard to differences in the elements of those crimes or the mens rea. (See discussion in fn. 3, *ante*, at p. 472.) Further, section 664 was held to define attempt as a crime not divided into degrees regardless of whether the crime attempted was so segmented. Thus, attempts to commit either first or second degree robbery resulted in identical punishments (*In re Huson* (1932) 126 Cal.App. 571 [14 P.2d 845]), as did attempts to commit first and second degree murders.

The impossibility of treating potential maximum life sentences the same as those setting a top term of a period of years by the simple expedient of halving them for attempts was expressed in *People* v. *Sama* (1922) 189 Cal. 153 [207 P. 893]. There the court was faced with a person sentenced for attempted robbery (before robbery was divided into degrees) at a time when robbery was punishable by a sentence of one year to life in prison, and section 664 declared its attempt was punishable by " 'imprisonment in the state prison . . . for a term not exceeding one-half the longest term of imprisonment [life] . . . .' " (*Sama, supra,* at p. 155.) The Supreme Court declared the indeterminate sentencing law could not be applied and ruled the inability of the indeterminate sentencing law to sentence Sama resurrected earlier sections of the Penal Code and permitted the trial court, upon remand, to sentence in accordance with the previous law.

Nor has the anomaly of sentencing identically for different degrees of crimes gone unnoticed. In *People* v. *Arguero* (1931) 113 Cal.App. 424 [298 P. 520], the court rejected a claim the sentencing court should have found the degree of attempted robbery. The court noted that before 1923 there were no degrees of robbery, and in 1923 the Legislature both divided robbery into crimes of first and second degree and amended section 664 in response to the *Sama* decision issued by the Supreme Court in 1922, to read: " '*provided, however, that if the crime attempted is murder, robbery, crime against nature or lewd and lacivious conduct the person guilty of such attempt shall be punishable by imprisonment in the state prison for a term not more than twenty years.*' " (*People* v. *Arguero, supra,* 113 Cal.App. 424, 425.) Thus, although contemporaneously dividing robbery into degrees, and murder having already been so divided, the Legislature elected to punish attempts without consideration of the degree of the underlying crime. In *Arguero* the court recognized the Legislature "may not have acted consistently in failing to distinguish, so far as punishment is concerned, between attempts to commit robbery in the first and second degrees," but concluded: "[t]he determination of such a question is a legislative and not a judicial function. The obvious import of section 664 of the Penal Code is inescapable." (*Arguero, supra,* at p. 427.)

Until the enactment of the determinate sentencing law in 1976 (eff. July 1, 1977), the Legislature, in face of the obvious import of section 664 and occasional mentions in published decisions took no specific action to divide attempts into degree, and when it did it merely stated the punishment for such an attempt (divided into a particular degree) "shall be determined as provided by this section." (§ 664, subd. 4.) In light of the Legislature's prompt response to the sentencing defect in section 664 discussed in *People* v. *Sama, supra,* 189 Cal. 153, it is apparent the failure to address the *Arguero* issue during the next 54 years (until the expiration of indeterminate sentencing) reflects an intent to relate the punishment for attempt to the maximum penalty established for the underlying crime. While not identically situated, each attempted murderer has attempted to commit a crime so heinous that its successful completion has been legislatively (and in the case of second degree murder, by the electorate) deemed potentially worthy of imprisonment for life.

This classification does not impinge upon fundamental interests and satisfies the *rational basis* test. (*People* v. *Hernandez* (1979) 100 Cal.App.3d 637, 644, fn. 2 [160 Cal.Rptr. 607]; *In re Kapperman* (1974) 11 Cal.3d 542, 548 [114 Cal.Rptr. 97, 522 P.2d 657].) ▮ "This test presumes the constitutionality of the statute and requires merely that the distinction drawn by the statute bear some reasonable relationship to a conceivable legitimate state purpose. [Citation.]" (*People* v. *Hernandez, supra,* 100 Cal.App.3d 637, 644.)

▮ *Cruel and/or Unusual Punishment*[4]

Macias does not contend that a term of five, seven or nine years for attempted second degree murder is per se cruel or unusual. Instead, he argues that punishment for a less serious crime (i.e., attempted second degree murder) to the same extent as for a more serious crime (i.e., attempted first degree murder) constitutes cruel or unusual punishment.

▮ Defining crime and determining punishment are matters uniquely legislative in nature, resting within the Legislature's sole discretion. (*People* v. *Wingo* (1975) 14 Cal.3d 169, 174 [121 Cal.Rptr. 97, 534 P.2d 1001]; *People* v. *Anderson* (1972) 6 Cal.3d 628, 640 [100 Cal.Rptr. 152, 493 P.2d 880]; *In re Orosco* (1978) 82 Cal.App.3d 924, 928 [147 Cal.Rptr. 463]; *In re Jones* (1973) 35 Cal.App.3d 531, 534 [110 Cal.Rptr. 765].) A defendant who challenges a punishment as cruel or unusual bears the burden of establishing that it "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. [Fn. omitted.]" (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921]; *In re*

---

[4]The Eighth Amendment to the United States Constitution prohibits cruel *and* unusual punishment, while article I, section 17 of the California Constitution prohibits cruel *or* unusual punishment.

*Orosco, supra,* 82 Cal.App.3d 924, 928.) "Unless this standard is met and unconstitutionality appears, clearly, positively, and unmistakably [citation], the courts will not tamper with the legislative directive." (*Id.,* at p. 928; *In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296]; *In re Jones, supra,* 35 Cal.App.3d 531, 534.)

In determining whether a punishment is disproportionate to the offense, the Supreme Court in *In re Lynch, supra,* 8 Cal.3d 410, 425-427, acknowledged that case precedent establishes the use of three distinct techniques, including: (1) "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society" (*id.* at p. 425); (2) a comparison of "the challenged penalty with the punishments prescribed in the *same jurisdiction* for *different offenses* which . . . must be deemed more serious" (*id.,* at p. 426); and (3) "a comparison of the challenged penalty with the punishments prescribed for the *same offense* in *other jurisdictions* having an identical or similar constitutional provision" (*id.,* at p. 427). (See *People* v. *Wingo, supra,* 14 Cal.3d 169, 175; *In re Foss* (1974) 10 Cal.3d 910, 919-920 [112 Cal.Rptr. 649, 519 P.2d 1073]; *People* v. *Karsai, supra,* 131 Cal.App.3d 224, 241.) These criteria constitute a three-part analytical examination of a punishment, as each "inquiry is not mechanical but will, if the results warrant, provide an additional ground for suspecting the consitutionality of the challenged penalty." (*People* v. *Wingo, supra,* 14 Cal.3d 169, 179.) In other words, "these tests are an *aid* in determining proscribed disproportionality, not in and of themselves conclusive; the ultimate test remains whether the punishment prescribed shocks the conscience and offends fundamental notions of human dignity." (*Smith* v. *Municipal Court, supra,* 78 Cal.App.3d 592, 596; see *People* v. *Serna* (1975) 44 Cal.App.3d 717, 719 [118 Cal.Rptr. 904].)

Macias relies solely on the cited second technique and the holding of *People* v. *Schueren* (1973) 10 Cal.3d 553, 559-560 [111 Cal.Rptr. 129, 516 P.2d 833], where our Supreme Court affirmed its decision in *People* v. *Anderson, supra,* 6 Cal.3d 628, 654, that "an excessive or disproportionate punishment" may be "unusual" within the meaning of section 17, article I of the California Constitution, defining that term "literally." Thus, the *Schueren* court held a term exceeding 14 years for assault with a deadly weapon was sufficiently "unusual" to constitute an unconstitutional application of the penalty portion of the criminal statute providing for a term of six months to life, where defendant was charged with assault with a deadly weapon with intent to commit murder punishable by an indeterminate term of 1 to 14 years; asserted his constitutional rights; successfully defended against the charged crime, but was convicted of the lesser included offense of assault with a deadly weapon.

*Schueren* is clearly distinguishable from the instant case because Macias has not been prejudiced by asserting his constitutional rights to self-incrimination

and trial by jury; did not successfully defend against the charged crime; and, upon judgment, he did not suffer a greater sentence for a lesser included offense. Moreover, the net effect of the relief provided within the *Schueren* decision (i.e., the modification of the sentence for the lesser included offense downward to the maximum potential term for the more serious, originally charged offense) is the imposition of the same potential maximum punishment for both the greater and lesser offenses, the precise situation Macias challenges here. Indeed, by failing to articulate the nature of relief either sought or constitutionally available, Macias impliedly desires us to declare section 664 invalid for characterizing the range of punitive treatment for all attempted murder, regardless of degree, five, seven, or nine years; to cast aside our judicial role; and to legislate a new sentencing structure for attempted murder. Although constitutionally we cannot, we would not in any event, as the Legislature by inaction after the passage of the initiative has impliedly ratified the application of section 664 to attempted murder.

The legislative function of determining crimes and imposing penalties is not an exact science. (*In re Lynch, supra,* 8 Cal.3d 410, 423; *People* v. *Gayther, supra,* 110 Cal.App.3d 79, 90; *People* v. *Williams* (1980) 101 Cal.App.3d 711, 720 [161 Cal.Rptr. 830].) Macias has not shown his punishment to be so disproportionate to his crime as to shock the conscience and offend fundamental notions of human dignity.[5]

### Disposition

The judgment is affirmed.

Wiener, Acting P. J., and Moon, J.,* concurred.

A petition for a rehearing was denied December 6, 1982, and appellant's petition for a hearing by the Supreme Court was denied February 16, 1983.

---

[5]The stratagem of Macias' challenge conveniently ignores the first *Lynch* test, because of the circumstances of the crime he committed and the trial court's finding of no factors in mitigation. For, "if the latter two *Lynch* techniques indicate disproportionality, the first test is nonetheless dispositive." (*People* v. *Gayther, supra,* 110 Cal.App.3d 79, 90; *People* v. *Wingo, supra,* 14 Cal.3d 169, 174; *Smith* v. *Municipal Court* (1978) 78 Cal.App.3d 592, 599 [144 Cal.Rptr. 504].)

*Assigned by the Chairperson of the Judicial Council.