Filed 8/1/23  P. v. Godoy CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B323320 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA017946) |
| v. | |
| KENNETH GODOY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Idan Ivri and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1996, defendant and appellant Kenneth Godoy (Godoy) was convicted on two counts of attempted murder for his involvement in a shooting. In 2022, Godoy filed a petition for resentencing under former Penal Code section 1170.95.[1] The trial court denied Godoy's petition without issuing an order to show cause, concluding Godoy failed to make a prima facie showing he was eligible for relief. Godoy contends the record of conviction shows it is possible that the jury convicted him under an imputed malice theory. In addition, Godoy argues the court erred by relying on the facts from this court's prior opinion of Godoy's direct appeal from his conviction, *People v. Godoy* (Dec. 15, 1999, B107094 [nonpub. opn.]). Because Godoy is ineligible for relief as a matter of law, we affirm the order denying the petition.

_____

[1]    All subsequent statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. All further references to the statute will be to the new section number.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. Charges and Conviction[2]

On May 12, 1994, two teenagers waiting at a bus stop were victims of a drive-by shooting. Though seriously injured, both survived. One of the victims saw three males in the van from which the shots were fired. A police officer who witnessed the shooting saw two gun muzzle flashes and smoke coming from the van. The officer pursued the van in her vehicle until the van crashed. Three male occupants jumped out and ran off. During the ensuing foot pursuit, the police officer "got a good look at [Godoy]" when he turned around and faced her with a gun in his hand before she gave up the pursuit for safety reasons.

Additional officers joined in the pursuit in an unmarked patrol car. They saw Godoy near their vehicle, and when they identified themselves to him, Godoy fled. One of the officers would later identify Godoy as the individual they encountered. A bystander alerted one of the officers to the fact that Godoy had dropped a gun, a nine-millimeter semi-automatic, near the spot where Godoy was standing when he was first confronted by the officers.

Another set of police officers saw Godoy at a shopping center and ordered him to stop, which he did. Approximately 15 minutes after the pursuit began, Godoy was detained when he was positively identified by the initial

---

[2] Our summary of the facts and procedural history is taken from the opinion of Godoy's direct appeal. We do not rely on the facts in resolving this appeal.

3

officer that pursued him when he jumped out the van. A .38-caliber semi-automatic handgun was also found in an area where the van was pursued. It was stipulated that the casings found in the van and at the crime scene were from the recovered nine-millimeter and .38-caliber guns.

At trial, Godoy asserted a mistaken identity defense based on the theory that he was in the area to purchase heroin. One of Godoy's codefendants, David Singerman (Singerman), admitted that he was present in the van with two other "guys" but denied that he was one of the shooters. The other codefendant, Sergio Robles (Robles), relied on a mistaken identity defense, but he presented no evidence.

Among the jury instructions given were CALJIC instructions on principals (CALJIC No. 3.00), aiding and abetting (CALJIC No. 3.01), and attempted murder (CALJIC No. 8.66). The court did not instruct the jury on the natural and probable consequences or felony murder doctrines.

During the rebuttal closing argument, the prosecutor contended that while Robles should be found guilty of attempted murder, Robles should not be found guilty of personal use of a firearm as to one of the victims.[3] In making this argument, the prosecutor asserted, "You know, if the judge and I go to a liquor store to commit a robbery, and the judge is just the driver of the car, and I go over there, and [. . .] during the robbery somebody gets killed

---

[3] We previously granted the People's unopposed request to take judicial notice of the reporter's transcript from Godoy's direct appeal containing trial counsel's closing arguments.

4

unintentionally or by accident, I'm an accomplice. [¶] I, through my actions [. . .] facilitated the crime. And these are principals. All of these three guys are principals in this case. [¶] The only difference, though, is that his honor, because he's the one that had the gun, or whichever one had the gun, and went in there and shot somebody, he would be charged with personal use."

The jury convicted Godoy of two counts of first degree attempted murder. As to both counts, the jury found true the allegations that the attempted murders were willful, deliberate, and premeditated, that Godoy was armed with a firearm, that Godoy personally used a firearm, and that Godoy personally inflicted great bodily injury on the victims. As to his codefendants, the jury found that Robles did not use a firearm and did not personally inflict great bodily injury on the victims, while it found that codefendant Singerman did use a firearm but did not personally inflict great bodily injury on the victims. Godoy was sentenced to two consecutive life sentences plus 16 years for the enhancements. The judgment against Godoy was affirmed in his direct appeal.

## B.    Petition for Resentencing

In January 2022, Godoy filed a petition for resentencing under section 1172.6. In his handwritten petition, Godoy claimed that he was eligible for relief because the jury was given instructions under the natural and probable consequences theory, and because the jury

found that Godoy did not shoot the victims, fire a weapon, or cause great bodily injury.  The court appointed counsel for Godoy and received briefing by the parties.

In response to the petition, the People asserted that Godoy was not convicted under the natural and probable consequences doctrine.  Instead, he was prosecuted solely as an actor with actual malice, and the jury convicted him of willful, deliberate, and premeditated attempted murder.  In support of the petition, the People attached the prior opinion from Godoy's direct appeal, the jury instructions from trial, and the jury verdicts.

In reply, Godoy's court appointed counsel argued that the prosecutor's statements during the rebuttal closing argument, together with the jury instructions given, showed that Godoy may have been prosecuted under an imputed malice theory.

At the hearing on the petition, the trial court noted that the jury was "given standard attempted murder instructions and the case was presented as a case where [Godoy and his codefendants] were either actually the shooter or aided and abetted the actual shooter."  The court stated that it relied in part on Godoy's prior appeal in determining whether to issue an order to show cause and found that Godoy's claim was meritless based on the opinion and jury instructions.  Consequently, the trial court denied the petition without issuing an order to show cause after finding that Godoy did not make a prima facie showing of entitlement to relief under section 1172.6.  It concluded that

"the jury was instructed on the necessary mens rea of intent to kill," and "was not instructed on the natural and probable consequences doctrine or a target crime in that context." Godoy timely appealed.

## DISCUSSION

### A.    Governing Law

The Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) SB 1437 also added now section 1172.6, providing a procedure for defendants whose cases are final to seek retroactive relief by petitioning the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1172.6, subd. (a).) Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) amended section 1172.6 to expand its coverage to individuals convicted of "attempted murder under the natural and probable

consequences doctrine."[4]  (§ 1172.6, subd. (a); *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

A petition for relief under section 1172.6 must include a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1172.6, subd. (b)(1).) "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response.  The petitioner may file and serve a reply within 30 days after the prosecutor's response is served.  These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order

---

[4]     Under the natural and probable consequences doctrine, a "'defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime [nontarget crime] that is the "natural and probable consequence" of the target crime.'" (*People v. Hardy* (2018) 5 Cal.5th 56, 92.)  "To find an aider and abettor guilty of a nontarget crime under the natural and probable consequences theory, the jury must find that the defendant aided and abetted the target crime, that a coparticipant in the target crime also committed a nontarget crime, and that this nontarget crime was a natural and probable consequence of the target crime the defendant aided and abetted." (*Ibid.*)

8

to show cause.[5]  If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."  (§ 1172.6, subd. (c).)

The record of conviction necessarily informs the trial court's prima facie inquiry, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at 971.)  "'"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."' [Citation.]"  (*Ibid.*)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Id.* at p. 972.)  However, "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition."  (*People v. Strong* (2022) 13 Cal.5th 698, 708; see also *People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*) ["For example, if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law"].)  We review de novo whether the trial court properly denied

---

[5]  If the petitioner makes a prima facie showing of entitlement to relief and issues an order to show cause, the trial court must hold an evidentiary hearing to determine whether to vacate the murder or attempted murder conviction, recall the sentence, and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c)–(d)(1).)

9

appellant's section 1172.6 petition without issuing an order to show cause.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 545 (*Coley*); *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

## B.    The Trial Court Properly Denied the Section 1172.6 Petition

Godoy argues that the trial court erred by denying his petition for resentencing without issuing an order to show cause because the record of conviction demonstrates that the jury conceivably could have convicted him under an imputed malice theory.  Additionally, Godoy contends that the trial court improperly denied his petition because it relied on the facts from this court's prior opinion.  We disagree with Godoy's contentions.

### 1.    *Godoy was Not Convicted under the Natural and Probable Consequences Doctrine*

Based on its plain language, section 1172.6 provides that a person convicted of attempted murder may be eligible for relief only if that conviction was "under the natural and probable consequences doctrine."  (§ 1172.6, subd. (a); *Coley*, *supra*, 77 Cal.App.5th at 548 ["Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)  Here, the trial court did not instruct the jury on the natural and probable consequences doctrine.  The record shows that the jury convicted Godoy of two counts of willful, deliberate, and

10

premeditated attempted murder, finding that Godoy was the only defendant that both personally used a firearm and inflicted great bodily injury on the victims. Accordingly, the jury found Godoy was an actual shooter in the attempted murders, and nothing suggests he was convicted under a natural and probable consequences or other imputed malice theory.

Godoy contends that although the jury was not instructed on the natural and probable consequences doctrine, the instructions that were given as to all the defendants might have confused the jury. He argues that CALJIC instructions on principals (CALJIC No. 3.00[6]), aiding and abetting (CALJIC No. 3.01[7]), and attempted murder (CALJIC No. 8.66), along with the prosecutor's analogizing this case to that of a liquor store robbery, made it plausible that the jury convicted Godoy under an imputed malice theory.[8]

---

[6] CALJIC No. 3.00 states concerning principals, "[t]he persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and *equally guilty* thereof." (Italics added.)

[7] Regarding liability for direct aiding and abetting, CALJIC No. 3.01 instructed the jury that a person aids and abets the commission or attempted commission of a crime when he or she acts "[w]ith knowledge of the unlawful purpose of the perpetrator" and "[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime."

[8] The felony murder doctrine is not applicable to attempted murder. (*People v. Wein* (1977) 69 Cal.App.3d 79, 92 ["the felony-murder rule has no application to a charge of attempted murder. An attempted murder requires the intent to take a human life — an
*(Fn. is continued on the next page.)*

The jury was given instructions as to what was required to convict each of the three defendants, whether as a shooter or an aider and abettor, for attempted murder. Although CALJIC No. 3.00 has the potential to be misleading in some circumstances,[9] the "equally guilty" language in CALJIC No. 3.00 did not allow the jury to find Godoy guilty of attempted murder without considering his mental state. The instruction for attempted murder (CALJIC No. 8.66) under which Godoy was convicted, required the prosecutor to prove that "[t]he person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." Further, the jury was expressly instructed to consider Godoy's guilt separately from his codefendants'. (CALJIC No. 17.00 ["You must decide separately whether each of the defendants is guilty or not guilty"].) Thus, by convicting Godoy of attempted murder with the given instructions, the jury necessarily found that Godoy himself harbored express malice.

Godoy's reliance on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), for the proposition that it is

___

element which cannot be supplied by the application of the felony-murder rule"].)

[9] See *People v. Nero* (2010) 181 Cal.App.4th 504, 516, 518 [the "equally guilty" language in CALJIC No. 3.00 is inconsistent with "the notion that an aider and abettor's mens rea 'floats free'" and thus "can be misleading"]; accord, *People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 918 ["former CALJIC No. 3.00 'could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding'"].

possible the jury imputed malice to him based solely on his participation in the crime, is misplaced. In *Langi*, the defendant was convicted of second degree murder in connection with the beating death of a robbery victim; the victim fell and struck his head after someone in a group that included the defendant punched him. (*Id.* at p. 975.) "As the case was tried, the jury could have found appellant guilty as an aider and abettor even if it found that someone else threw the fatal punch." (*Id.* at p. 980.) The conviction was based on two jury instructions "of central significance" given at trial: (1) CALJIC No. 8.31 on second degree murder and (2) CALJIC No. 3.01 on aiding and abetting. (*Id.* at p. 981.) The second degree murder instruction required the jury to find the perpetrator had deliberately performed a fatal act, such as a punch, "with knowledge of the danger to, and with conscious disregard for, human life," but it did not require finding that the perpetrator's purpose was to kill the victim. (*Id.* at pp. 981–982.) For the jury to convict the defendant as an aider and abettor of second degree murder, they could have found appellant only intended to encourage the deliberate punch, regardless of whether or not he "intended to aid or encourage [the] killing," or "knew of and disregarded the risk of such a killing." (*Id.* at p. 983.) Because the record of the defendant's second degree murder conviction did not conclusively negate the possibility that the jury found him guilty as an aider and abettor on an imputed malice theory, an evidentiary hearing was required. (*Id.* at pp. 983–984.)

13

Unlike in *Langi*, Godoy was convicted of attempted murder, and therefore, the jury instructions in this case did not include the second degree murder instruction that resulted in the ambiguity found in *Langi*. In contrast to the second degree instructions, the attempted murder instructions required the jury to find that Godoy committed the act with express malice. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890 ["'Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing'"]; see *Coley*, *supra*, 77 Cal.App.5th at pp. 547–548 [holding *Langi* inapplicable where the attempted murder conviction was based on jury instructions requiring intent to kill].) The jury was further instructed that an aider and abettor had to act "[w]ith knowledge of the unlawful purpose of the perpetrator," and "[w]ith the intent or purpose of committing, encouraging, or facilitating the commission of the crime." (CALJIC No. 3.01.) Thus, the jury was required to find that even an aider and abettor in this case knew of the killer's purpose and intended to encourage the killing.

Godoy asserts that the liquor store robbery analogy that the prosecutor used in his closing rebuttal argument also suggested that Godoy could have been convicted under a theory of imputed malice. However, the prosecutor directed these comments toward Robles. Further, the trial court expressly instructed the jury: "The arguments of the lawyers are not evidence. It is the lawyers' interpretation of the evidence to you." We presume the jury followed the

14

court's instructions, especially given that the challenged remarks concerned a different codefendant. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30; see also *People v. Cortes* (2022) 75 Cal.App.5th 198, 206 ["The prosecutor made a single comment on a legal theory in closing that was not presented in the case. Nothing in the charges, the instructions, or the balance of the trial permitted the jury to find [the defendant] guilty on a theory other than direct aiding and abetting or liability as a perpetrator of murder and attempted murder"].)

2. *Any Error by the Trial Court in Relying on the Facts from the Prior Appellate Opinion was Harmless*

Godoy claims the trial court improperly considered and relied on the factual summary in this court's prior appellate opinion when it denied his petition. Section 1172.6, subdivision (d)(3) permits the court to "consider the procedural history of the case recited in any prior appellate opinion." (Cf. *People v. Flores* (2022) 76 Cal.App.5th 974, 987–988 [concluding the factual summary in an appellate opinion cannot be used to establish, as a matter of law, ineligibility for resentencing at the prima facie stage].) Even if the trial court relied on the fact pattern in this court's prior opinion in denying Godoy's petition, it would at most amount to harmless error. The record of conviction demonstrates that Godoy is ineligible for relief under section 1172.6 as a matter of law because he was not convicted of attempted murder under the natural and probable

15

consequences doctrine.  (See *People v. Mejorado* (2022) 73 Cal.App.5th 562, 572 [error in failing to appoint counsel is harmless "if we can determine that the record of conviction ""contain[s] facts refuting the allegations made in the petition"""]; cf. *Harden, supra*, 81 Cal.App.5th at 47–48 [defendant ineligible as a matter of law where record "conclusively establish[ed]–with no factfinding, weighing of evidence, or credibility determinations" the jury convicted him on a still-valid theory of murder].)  Based on the foregoing, the trial court did not err in denying his petition without issuing an order to show cause.

## DISPOSITION

The order denying Godoy's section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

Mori, J.

We concur:

CURREY, P. J.

COLLINS, J.

16