[No. A045435. First Dist., Div. One. May 17, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEXANDER DOUGLAS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

**COUNSEL**

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, and Susan M. Kwan, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney

General, Martin S. Kaye and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEIN, J.**—Alexander Douglas appeals from a conviction of attempted murder (Pen. Code, §§ 664, 187)[1] and assault with a firearm (§ 245, subd. (a)(2)). The jury also found that he acted willfully, deliberately and with premeditation (§§ 189 and 664, subd. 1), used a handgun during the offenses (§§ 12022.5 and 1203.06, subd. (a)(1)(i)) and intentionally inflicted great bodily injury on the victim (§ 12022.7). After finding him sane at the time of the offenses, and denying his motion for new trial, Douglas was sentenced to state prison for a life term with a consecutive five-year term for the gun use and great bodily injury enhancements. Sentence was stayed on the assault charge.

Douglas contends that the trial court erred by failing to instruct the jury on the offense of attempted second degree murder. He further asserts that the jury's failure to specify the degree of the offense established the crime as attempted second degree murder as a matter of law and, thus, the trial court lacked jurisdiction to impose sentence for other than attempted second degree murder. We find both of these arguments based on the erroneous premise that there exists a crime of "attempted second degree murder."

. . . . . . . . . . . . . . . . . . . . . . . .*

### FACTS

Alexander Douglas lived in a dormitory at the Veteran's Home in Yountville. Alfreda, a volunteer at the home, and Douglas became romantically involved and spent the evening of July 1 and the morning of July 2, 1987, together at her home. In the morning Douglas called Alfreda names and accused her of "running around with three other men," specifically naming Ralph Colin, another resident of the home. Alfreda drove Douglas back to the Veteran's Home later that morning. He was still upset and told her he never wanted to see her again.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.
* See footnote, *ante,* page 544.

Upon returning to his dormitory at the Veteran's Home, Douglas told Colin that he had a present for him which he would give him later. Douglas seemed normal to Colin; he did not raise his voice. Later that morning, Douglas asked Norman Spencer, another resident of the Veteran's Home, for a ride to San Francisco. Spencer first drove Douglas to the dormitory where he waited outside while Douglas went inside to collect some belongings. Douglas seemed normal to Spencer.

Inside the dormitory Douglas asked Colin to follow him in order to get the present. Colin went with him and stood about six feet from Douglas as he opened his locker. Douglas said he had the present as he turned around displaying a gun in his hand. Douglas backed into the middle of the hall, called Colin a "chiseler," and ordered him to turn around. Nicholas Vratari, who was also present in the dorm, looked up and saw Douglas holding a gun. Douglas then said to Colin, "I'll teach you to two-time on me," and shot him in the back of the neck. Douglas ordered Vratari to leave, threatening to shoot him if he did not.

Spencer, who was waiting in the car, did not hear the gunshot nor did he see a gun when Douglas came out of the dorm. They drove to San Francisco where Spencer left Douglas.

Douglas knew Alfreda kept a gun under her mattress. After the shooting, she discovered the gun was missing.

Colin remained hospitalized for three days. The bullet had entered through the right side of his neck, missed all of the major structures and exited through the front. Colin sustained muscle damage to his neck and back. Had the bullet traveled a slightly different path, however, Colin could have sustained partial to complete paralysis or death.

Douglas was arrested in Las Vegas, Nevada, on October 3, 1988, 15 months after he shot Colin and threatened Vratari.

In his defense Douglas testified that he loved Alfreda and had seen Colin with her at a dance. On June 29, 1987, he hurt his back and was prescribed Tylenol and codeine. By July 1, the pain from his back was "driving [him] crazy." He was angry with Alfreda because she wanted to go to a dance at the home and leave him at her house. He denied that he was angry about Alfreda's relations with other men and denied stealing her gun. By July 2, Douglas was still in pain and took some of the medication. He could not remember how many pills he took or when he last took the medication. He recalled Alfreda driving him back to the Veteran's Home, where he deposited one check and cashed another. The last thing Douglas remembered was

having a discussion with Colin. Months later, in Nevada, he regained consciousness. He did not remember telling Colin about a present, anything about the shooting, or how he managed to get from the Veteran's Home in Yountville to Nevada.

## DISCUSSION

### I. Are There Degrees of Attempted Murder?

 Douglas claims that the crime of attempted murder is divided into degrees. From this premise he argues that attempted second degree murder is a lesser-included offense of willful, deliberate and premeditated attempted murder; in other words, of attempted first degree murder. (See *People v. Wickersham* (1982) 32 Cal.3d 307, 329-330 [185 Cal.Rptr. 436, 650 P.2d 311]; *Stone v. Superior Court* (1982) 31 Cal.3d 503, 517 [183 Cal.Rptr. 647, 646 P.2d 809].) Douglas defines attempted second degree murder as an attempted killing of a human being with specific intent to kill and express malice aforethought; the crime does not require proof of premeditation and deliberation. (*Wickersham, supra*, at p. 330.) Respondent, relying on *People v. Wein* (1977) 69 Cal.App.3d 79, 93 [137 Cal.Rptr. 814], and *People v. Macias* (1982) 137 Cal.App.3d 465, 471-472 [187 Cal.Rptr. 100], argues that there is only a single crime of attempted murder, not distinguished by degrees.

At the time of the *Wein* and *Macias* decisions, Penal Code section 664, subdivision 1, provided for the same length of imprisonment—either from one to twenty years at the time of *Wein*, or for five, seven or nine years at the time of *Macias*—if the completed crime carried a maximum life sentence. Since both first and second degree murder carry potential life sentences, the law imposed a uniform punishment for attempted murder, regardless of the degree. Thus, the continued validity of the holdings of the *Wein* and *Macias* cases, that the crime of attempted murder is not divided into degrees, can be questioned, since the Legislature amended section 664, subdivision 1, in 1986. The statute now provides for a punishment of life in prison with the possibility of parole for an attempted murder which was willful, deliberate and premeditated; however, if the attempted murder is not specifically found to be willful, deliberate and premeditated, it is punishable by imprisonment for five, seven, or nine years.[2] Penal Code section 664,

---

[2] Section 664, subdivision 1 provides: "If the offense so attempted is punishable by imprisonment in the state prison, the person guilty of such attempt is punishable by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; provided, however, that if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punishable by imprisonment in the state prison for life with the possibility of parole; provid-

which governs attempted crimes, provides at subdivision 4 that an attempt may be of any degree of the underlying crime, and the punishment shall be determined as provided by that section.[3]

The Legislature did not necessarily create different degrees of attempted murder by imposing different penalties. It can provide for varied punishments for a single crime depending on factors involved in the commission of that offense without dividing it into degrees. For example, the punishment for grand theft varies widely depending upon the nature of the articles stolen.[4] Kidnapping is generally punishable by imprisonment for three, five, or eight years, but if the person kidnapped is under 14 years of age, the kidnapper faces imprisonment for five, eight, or eleven years. (§ 208.) In neither of these examples did the Legislature silently create degrees of grand theft (itself the greater degree of the crime of theft) or kidnapping.

■ The imposition of separate penalties for different levels of culpability for attempted murder may resemble the degree gradations of the completed crime; however, the power to define criminal conduct and determine penalties is exclusively vested in the legislative branch, subject to constitutional provisions. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 477-478 [194 Cal.Rptr. 390, 668 P.2d 697].) The division of a crime into degrees carries more than linguistic significance. It requires an exacting degree of specificity in the jury verdict, court determination or guilty plea. (E.g., §§ 1097, 1157, 1192-1192.2.) ■ Accordingly—and in view of the broad impact of the "degree" distinction—we construe section 664, subdivision 1 narrowly and do not find degrees of attempted murder where the Legislature has not expressly provided for same.

Our determination that attempted murder is not divided into degrees disposes of Douglas's assignment of error to the trial court's failure to

ed, further, that if the crime attempted is any other one in which the maximum sentence is life imprisonment or death the person guilty of the attempt shall be punishable by imprisonment in the state prison for a term of five, seven, or nine years. The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

[3] Section 664, subdivision 4 provides: "If a crime is divided into degrees, an attempt to commit the crime may be of any such degree, and the punishment for the attempt shall be determined as provided by this section."

[4] Grand theft of a vehicle, trailer or vessel is punishable by imprisonment in state prison for two, three or four years or a fine of not more than $10,000, or both, or by imprisonment in the county jail not to exceed one year or a fine of not more than $1,000 or both. (§ 487h.) Grand theft of a firearm is punishable by imprisonment in the state prison for sixteen months, two or three years. In all other cases, grand theft is punishable by imprisonment in a county jail not exceeding one year or in the state prison. (§ 489.)

instruct on attempted second degree murder. The instructions given amply informed the jury of its tasks and choices under section 664, subdivision 1.

The trial court instructed the jury with a slightly modified form of CALJIC No. 8.66, the general attempted murder instruction. It requires a specific intent to kill (malice) and a direct act towards that end; it does not include the elements of premeditation or deliberation which would justify imposition of the greater penalty under section 664. The court then gave CALJIC No. 8.67, which instructed the jury that if they determined that Douglas had committed attempted murder, they then must make a specific finding on whether the offense was willful, deliberate and premeditated. The verdict forms later given to the jury provided for such a specific finding. CALJIC No. 8.67 sufficiently distinguishes the different elements necessary for imposition of either of the punishments under section 664, subdivision 1, regardless of whether those punishments establish different degrees of attempted murder.

Douglas's final contention in this regard is that the jury did not find the degree of his offense and, by virtue of section 1157, he was, by implication, found guilty of attempted second degree murder. Section 1157 provides that if the jury fails to determine the degree of a crime, the defendant shall be deemed guilty of the lesser degree. The statute, by its terms, affects only the conviction of "a crime which is distinguished into degrees," and accordingly finds no application here.

■ The jury's specific findings were sufficient for imposition of the higher penalty. Among its other findings, the jury found Douglas guilty of attempted murder and that the attempted murder was committed willfully, deliberately and with premeditation within the meaning of sections 189 and 664, subdivision 1. In the absence of a crime specifically separated into degrees, the jury's finding of special circumstances warrants the imposition of the higher penalty as a matter of law. (Cf. *People* v. *Williams* (1984) 157 Cal.App.3d 145, 153-154 [203 Cal.Rptr. 562].)

. . . . . . . . . . . . . . . . . . . . . . .*

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 30, 1990.

---

*See footnote, *ante,* page 544.