[No. E009493. Fourth Dist., Div. Two. May 15, 1992.]

THE PEOPLE, Plaintiff and Appellant, v.
DONALD ALAN MILLER et al., Defendants and Respondents.

[No. E010483. Fourth Dist., Div. Two. May 15, 1992.]

In re DONALD ALAN MILLER on Habeas Corpus.

**Counsel**

Grover C. Trask II, District Attorney, and Gary B. Tranbarger, Deputy District Attorney, for Plaintiff and Appellant.

Donald Alan Miller, in pro. per., Laurel M. Nelson-Laduca and Phillip I. Bronson, under appointments by the Court of Appeal, for Defendants and Respondents.

## Opinion

**DABNEY, Acting P. J.**—As permitted by Penal Code section 1506,[1] the People appeal from an order of the superior court granting the petition of defendants Donald Alan Miller and Leroy Freeman for a writ of habeas corpus. The order directed that defendants be resentenced to terms of imprisonment of 15 years to life. The People contend that the original sentences of 25 years to life were valid under section 182.

In addition, Miller has filed an in propria persona petition for writ of habeas corpus in this court in which he urges that his conviction should be reversed on the grounds of: (1) ineffective assistance of appellate counsel; (2) newly discovered evidence; and (3) retroactively applicable authority. We consider his petition concurrently with the appeal solely to determine whether an order to show cause should issue.

### Procedural Background

Defendants were charged in an amended information with conspiracy to commit murder (§§ 182, 187) and other counts. The information alleged seven overt acts and alleged the conspiracy ran from December 20, 1978, through January 4, 1979. In April 1980 a jury found defendants guilty of conspiracy to commit murder and found all seven overt acts to be true. The jury was unable to reach a verdict on the remaining counts, a mistrial was declared, and the remaining counts were dismissed. Both defendants were sentenced to 25 years to life in prison.

Defendants appealed their convictions and filed petitions for writ of habeas corpus. This court denied the petitions and issued an unpublished opinion in the appeal affirming the convictions and sentences of both defendants. In July 1982, defendants filed petitions for hearing and for writ of habeas corpus in the California Supreme Court. Those petitions were denied, as was a later petition for writ of habeas corpus in federal court.

On October 4, 1990, defendants filed new petitions for writ of habeas corpus in the Superior Court of the County of Riverside. The petitions alleged that defendants' sentences of 25 years to life were invalid under section 1157. Defendants argued they received the sentences appropriate for conspiracy to commit first degree murder, but the jury verdict had failed to specify the degree of the crime. The court issued an order to show cause, and the People filed a return. The court granted the petitions as to both defendants and reduced their sentences to 15 years to life.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## DISCUSSION

*Review of Invalid Sentence.*

The People concede that a sentence in excess of the court's jurisdiction may be reviewed on habeas corpus. ■ A writ of habeas corpus "will always issue to review an invalid sentence, when, without the redetermination of any facts, the judgment may be corrected to accord with the proper determination of the circumstances. [Citations.]" (*In re Estrada* (1965) 63 Cal.2d 740, 750 [48 Cal.Rptr. 172, 408 P.2d 948].) When the question raised in a petition for writ of habeas corpus "is one of excessive punishment, it is a proper matter for us to consider on a writ of habeas corpus, despite [the defendant's] delay. [Citation.]" (*In re Ward* (1966) 64 Cal.2d 672, 675 [51 Cal.Rptr. 272 [414 P.2d 400] [20-year delay]; see also *In re Huffman* (1986) 42 Cal.3d 552, 555 [229 Cal.Rptr. 789, 724 P.2d 475].)

This is because a defendant's delay in raising the issue of excessive sentencing "work[s] primarily to his own disadvantage." (*In re Bartlett* (1971) 15 Cal.App.3d 176, 186 [93 Cal.Rptr. 96].) Thus, "It is difficult to conceive where the rights of the People have been harmed by [the defendant's] lack of diligence—unless they intend to sue him for the reasonable cost of his room and board during that time." (*Ibid.*)

*Section 1157.*

Defendants contend their sentences were invalid under section 1157. That section states, "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find a degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." ■ Section 1157 establishes " 'a rule to which there is to be no exception.' " (*People* v. *McDonald* (1984) 37 Cal.3d 351, 382 [208 Cal.Rptr. 236, 690 P.2d 709].) The rule applies whenever the jury fails to specify the degree of the crime on the verdict form. (*Ibid.*) ■ Defendants argue that because the jury did not specify the degree of the crime they conspired to commit, their crime was deemed under section 1157 to be conspiracy to commit second degree murder.

The People respond that section 1157 does not apply here, because the crime of conspiracy is not divided into degrees. Instead, section 182 directly addresses the jury's failure to distinguish among the degrees to the crime which was the object of the conspiracy. Section 182, subdivision (a) states, "When [persons] conspire to commit any . . . felony [other than a crime against the person of certain public officials], they shall be punishable in the

same manner and to the same extent as is provided for the punishment of that felony. If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy to commit the felony shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree."

Defendants rely on *People* v. *Horn* (1974) 12 Cal.3d 290 [115 Cal.Rptr. 516, 524 P.2d 1300] and *People* v. *Alexander* (1983) 140 Cal.App.3d 647 [189 Cal.Rptr. 906][2] to support their argument that section 1157 governs this case. Neither *Horn* nor *Alexander* is on point. Neither case dealt with section 1157 at all, and the error found in each case was instructional error.

In *Horn*, the defendant was convicted of conspiracy to commit first degree murder. The court noted that to comply with section 182, "the trier of fact must determine the identity of the conspired felony, and if that felony is divided into degrees, the degree of the felony." (*Horn*, *supra*, 12 Cal.3d at p. 295.) The court held that under the facts, the trial court erred in failing to instruct the jury on the lesser included offense of conspiracy to commit voluntary manslaughter. In *Horn*, the court disagreed with the Attorney General's argument that "conspiracy is a crime without degrees or lesser included offenses, . . ." (*Id.*, at p. 296.) However, the court focused on lesser included offenses to conspiracy to commit first degree murder, and never explicitly stated that such lesser included offenses constitute *degrees* of the crime of conspiracy.

In *Alexander*, the defendant was convicted of conspiracy to commit first degree murder. The appellate court found error in the trial court's failure to instruct the jury on the elements of first degree murder and on the lesser included offense of conspiracy to commit second degree murder, which was supported by the evidence. The trial court compounded the error by erroneously instructing the jury on implied malice. (*Alexander*, *supra*, 140

[2]The crime in this case occurred before the Legislature abolished the defense of diminished capacity in this state. (See Stats. 1981, ch. 404, § 4, p. 1592 [enacting Pen. Code, § 28 abolishing the diminished capacity defense based on mental disease or defect].) *Horn*, decided in 1974, was premised largely on the continued existence of the diminished capacity defense. In light of the subsequent legislative abrogation of that defense, we question the continued validity of *Horn* and *Alexander*. (See e.g., *People* v. *Saille* (1991) 54 Cal.3d 1103, 1109-1112 [2 Cal.Rptr.2d 364, 820 P.2d 588], reviewing the historical development of the limited capacity defense.) We believe that the Supreme Court, faced with the same facts today, would decide the issue along the lines of Justice Mosk's dissent in *Horn*. Nonetheless, because of the timing of these crimes, we assume in our analysis that *Horn* reflects the then current legal standard.

Cal.App.3d at p. 666.) The appellate court reduced the sentence to that for conspiracy to commit second degree murder. The court stated, "Where the prejudicial error goes only to the *degree* of the offense for which the defendant was convicted, the appellate court may reduce the conviction to *a lesser degree* and affirm the judgment as modified, . . ." (*Ibid.*, italics added.)

The concept of degrees applies to the offenses which were the object of the conspiracy, not to the conspiracy itself. (See § 182.) The *Alexander* court's reference to degrees appears to be merely imprecise language, not a holding that conspiracy itself is divided into degrees. Neither *Horn* nor *Alexander* supports defendants' argument that their sentences were invalid under section 1157.

In an analogous context, courts have determined that the crime of attempted murder (§§ 664, 187) is not divided into degrees. (*People v. Douglas* (1990) 220 Cal.App.3d 544, 548-550 [269 Cal.Rptr. 579]; see also, *People v. Cooper* (1991) 53 Cal.3d 771, 832 [281 Cal.Rptr. 90, 809 P.2d 865]; *People v. Macias* (1982) 137 Cal.App.3d 465 [187 Cal.Rptr. 100]; *People v. Wein* (1977) 69 Cal.App.3d 79 [137 Cal.Rptr. 814].) In *Douglas*, the court held that because attempted murder was not " 'a crime which is distinguished into degrees,' " section 1157, by its terms, did not apply. (*Douglas, supra*, at p. 550.)

The reasoning of the *Douglas* court applies to the situation before us. ██ A conspiracy is an agreement, the design and object of which is to do an unlawful act, accompanied by an overt act to effect the object of the agreement. (*In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 998 [279 Cal.Rptr. 236].) ██ Even though the defendant may conspire to commit a crime which is divided into degrees, the *conspiracy itself* has no degrees. Therefore, conspiracy to commit second degree murder is not a different degree of the crime of conspiracy to commit first degree murder. Section 1157, by its terms, does not apply to the crime of conspiracy.

 In this case, the court acted according to statutory mandate and sentenced defendants under section 182.[3] The punishment was valid and therefore was not subject to revision in the petition for writ of habeas corpus.

---

[3]Both the People and defendants also resort to established rules of statutory construction to resolve the "ambiguity" created by the operation of sections 182 and 1157. We see no need to resort to statutory construction in this instance. When a statute is unambiguous, it is to be applied according to its terms without further judicial construction. (*People v. Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

By its terms, section 1157 applies only to "crime[s] distinguishable by degrees." Conspiracy to commit murder is not such a crime. Thus, section 1157 has no application to the facts before us, but section 182 directly applies to those facts.

*Due Process.*

Defendants contend that it would violate due process to interpret section 182 as requiring punishment for conspiracy to commit first degree murder without requiring the jury to find premeditation and deliberation, requirements of a first degree murder conviction. (*People* v. *Anderson* (1968) 70 Cal.2d 15, 26-27 [73 Cal.Rptr. 550, 447 P.2d 942].) In *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], the United States Supreme Court·held that the due process clause protects the accused from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. For reasons discussed below, we find this argument barred by laches.

*Instructional Error.*

Defendants contend that at their trial, the jury was erroneously instructed on implied malice and felony murder, but was not instructed on the elements of first degree murder. They argue that these instructional errors, similar to those condemned in *Horn* and *Alexander*, supported the superior court's order reducing their sentences.[4] ▮ Instructional error which amounts to a deprivation of constitutional rights may be alleged in a petition for writ of habeas corpus. (See *In re Brown* (1973) 9 Cal.3d 612, 617-621 [108 Cal.Rptr. 465, 510 P.2d 1017]; *In re Wagner* (1981) 119 Cal.App.3d 90, 103, 109-112 [173 Cal.Rptr. 766].)

---

[4]As an alternative basis for its order, the superior court suggested that *Alexander* supported resentencing to correct instructional error. In *Alexander*, the court exercised its discretion to reduce the conviction to a lesser included offense and to affirm the modified judgment. In that case, the court reduced the conviction from conspiracy to commit first degree murder to conspiracy to commit second degree murder. A close examination of *Alexander* shows that such a disposition would be inappropriate here. (*Alexander, supra,* 140 Cal.App.3d at p. 666.)

*Alexander* was an appeal from a conviction, not a collateral attack. In the appeal, the court had before it the complete record of the trial. In reviewing that record, the court concluded that the evidence would have supported a conviction of conspiracy to commit second degree murder, and the trial court erred in failing to instruct on that lesser included offense. The court explained that the evidence could have supported a finding that defendants conspired to act "with wanton disregard of the probability that deaths would occur as the result of the initial attacks themselves or of the racial riot which they would inevitably spark. Also the jury could have found that appellant joined in an agreement to kill but that his assent did not involve the degree of careful consideration necessary to sustain a conviction of conspiracy to commit first degree murder." (*Alexander, supra,* 140 Cal.App.3d at pp. 665-666.)

Here, in contrast, we do not review the entire trial; the petition filed in the superior court addresses only the facial validity of the sentences. Thus, we could not determine whether the evidence in the record even supported the giving of instructions on the lesser included offense of conspiracy to commit second degree murder.

The challenge to the jury instructions goes to the validity of the convictions themselves. Although collateral attacks on invalid sentences are treated with some latitude, collateral attacks on convictions must be supported by a showing of diligence, as discussed *post.*

*Error Not Raised in Appeal.*

As discussed above, when the error concerns an invalid sentence which can be corrected without redetermining facts, courts generally excuse delay in seeking relief. ■ However, with respect to errors which undermine the validity of the conviction, a petition for writ of habeas corpus may be denied when a remedy by appeal was available and was not employed. (*In re Garcia* (1977) 67 Cal.App.3d 60, 65 [136 Cal.Rptr. 461]; *In re Gomez* (1973) 31 Cal.App.3d 728, 732 [107 Cal.Rptr. 609].) This rule applies "even though the alleged errors involving factual issues relate to an asserted denial of constitutional rights." (*In re Dixon* (1953) 41 Cal.2d 756, 761 [264 P.2d 513].)

The requirement of exhaustion of the appellate remedy is a discretionary policy governing the reviewing court's discretion to issue the writ. (*In re King* (1970) 3 Cal.3d 226, 229-230, fn. 1 [90 Cal.Rptr. 15, 474 P.2d 983].) The requirement may be relaxed when the defendant relies on decisions rendered after his conviction (*ibid.*), when issues of fundamental due process rights are involved (*In re Moss* (1985) 175 Cal.App.3d 913, 921-22 [221 Cal.Rptr. 645]), or when exceptional circumstances justify considering an issue not raised in a prior appeal (See *In re Shipp* (1965) 62 Cal.2d 547, 552 [43 Cal.Rptr. 3, 399 P.2d 571]). To raise one of these exceptions, the defendant must plead facts excusing his failure to raise the issue on appeal.

Moreover, "[a] party seeking relief by way of a petition for relief by way of an extraordinary writ is required to move expeditiously. (*In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793]; *Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995, 996-997 [115 Cal.Rptr. 620].)" (*Moss, supra,* 175 Cal.App.3d at p. 921.) "[A]ny significant delay in seeking collateral relief . . . must be fully justified. [Citations.]" (*People* v. *Jackson* (1973) 10 Cal.3d 265, 268 [110 Cal.Rptr. 142, 514 P.2d 1222].) The defendant "must point to particular circumstances sufficient to justify substantial delay as [Supreme Court decisions] have long required." (*In re Stankewitz* (1985) 40 Cal.3d 391, 396-397, fn. 1 [220 Cal.Rptr. 382, 708 P.2d 1260].)

■ Here, defendants contend that the issue was not discovered until 1988; hence it was not raised on appeal. They assert they used diligence to file the petitions after the issue was discovered, and the petitions were based in part on new case authority.

*Laches.*

When an issue of constitutional dimension is raised, some reasonable delay may be excused, but the excusable period necessarily has practical limits. (*In re Streeter* (1967) 66 Cal.2d 47, 52 [56 Cal.Rptr. 824, 423 P.2d 976].) Even constitutional error may be waived, and courts have held that

unexplained or unjustified delay in seeking relief may amount to such a waiver. (*In re Ronald E.* (1977) 19 Cal.3d 315, 322 [137 Cal.Rptr. 781, 562 P.2d 684].)

In *Stankewitz, supra,* 40 Cal.3d at pages 396-397, footnote 1, the court concluded that an 18-month delay was "substantial." However, the court excused the delay in light of earlier Supreme Court decisions that had approved filing a petition for writ of habeas corpus simultaneously with the opening brief in an automatic appeal. The court cautioned, however, that it would not necessarily approve such a procedure in future cases. (*Ibid.*)

In *Dixon, supra,* 41 Cal.2d 756, the court concluded that the doctrine of laches barred the defendant's petition for writ of habeas corpus. The defendant was represented by counsel throughout the trial and made no showing he could not obtain appellate counsel. He prepared the petition for writ of habeas corpus himself, but later obtained counsel to present argument at the hearing on the petition. (*Id.,* at p. 760.)

In contrast, in *In re Saunders* (1970) 2 Cal.3d 1033, 1040-1041 [88 Cal.Rptr. 633 472 P.2d 921], the court found excusable delay when a defendant with a ninth grade education waited five years before seeking collateral relief to raise the claim that his trial counsel had been ineffective for failing to raise the defense of diminished capacity. Likewise, in *Moss, supra,* 175 Cal.App.3d 913, the court concluded that a nine-month delay was not significant when the defendant was indigent, and the delay was caused by his inability to obtain appellate counsel. (*Id.,* at p. 922.)

In *In re Huddleston* (1969) 71 Cal.2d 1031, 1034 [80 Cal.Rptr. 595, 458 P.2d 507], the court excused a two- and one-half-year delay without any discussion of the reasons for the delay. However, in light of more recent pronouncements of the Supreme Court, an adequate explanation for delay is a prerequisite to our consideration of a collateral attack on the judgment. (*Stankewitz, supra,* 40 Cal.3d at pp. 396-397, fn. 1; *Ronald E., supra,* 19 Cal.3d at p. 327.)

In *In re Spears* (1984) 157 Cal.App.3d 1203, 1208 [204 Cal.Rptr. 333] the court stated that an 18-month delay was "adequately explained . . . as attributable to [defendant's] lack of capacity to represent himself [citation] and the scarcity of channels through which legal assistance is available to indigent prisoners. Petitioner attempted to obtain legal assistance to pursue his case immediately upon affirmance of his conviction and has been neither dilatory nor in any other way culpable for the delay. Additionally, 18 months is not a significant delay. [Citation.] Moreover, the rights of the People are not harmed by the delay. [Citation.]"

To explain the delay, Miller stated that he was alerted in late 1988 by an attorney with whom he corresponded that section 1157 applied to his sentence. Thereafter, he wrote to at least eight attorneys, seeking representation for himself and Freeman. Miller claims that he is indigent and unable to

afford representation. Finally, in April 1990, his current appellate counsel agreed to represent him for a modest retainer, and the petition was filed in October 1990.

Miller did not assert that he was unable to represent himself in filing the petition. In fact, he had earlier filed an in propria persona petition for writ of habeas corpus in federal court and later filed the in propria persona petition in this court. Miller was a medical doctor, and has completed two years of law school. We conclude that the two-year delay between his discovery of the issue and the filing of the petition was not excusable under the circumstances, and Miller's laches bars our review.

Freeman's counsel filed a declaration to explain Freeman's delay in filing the petition. Freeman first learned of the issue in the fall of 1988 through correspondence with Miller. Freeman then wrote to his trial counsel, who did not respond, and requested representation. Miller wrote several other letters to trial counsel in 1988 and 1989 urging him to act on Freeman's behalf. Finally, in March 1990, trial counsel met with Freeman and undertook to represent him. Counsel stated that Freeman was indigent and had "limited formal education" and no legal education or training.

Again, we find lack of diligence in pursuing relief once the legal issue was discovered. The record reflects that the only action Freeman himself took was to write a single letter to trial counsel, which was ignored for over a year and a half. The record does not indicate that Freeman took any other steps to obtain representation in filing the petition. Although the declaration stated that Freeman had "limited education", this imprecise term is susceptible to a wide range of interpretations. Significantly, the record contains no declaration that Freeman was incapable of filing a petition in propria persona. Diligence requires the defendant to pursue all the steps of which he is capable to bring the issue before the court. Unlike the assiduous efforts of the defendant which were found to excuse a five-year delay in *Saunders, supra,* 2 Cal.3d at pages 1040-1041, the court record here does not demonstrate the required diligence.

*Cases Decided After Convictions.*

To explain the delay, defendants also rely on decisions rendered after their appeal: *McDonald, supra,* 37 Cal.3d 351; *Alexander, supra,* 140 Cal.App.3d 647; and *United States* v. *Chagra* (W.D.Tex. 1986) 638 F.Supp. 1389. However, these authorities do not reflect any significant change in the law. *Alexander* is simply a variation on *Horn,* not a departure from existing principles. The parties were well aware of *Horn* during the trial and appeal.

Moreover, *McDonald* is distinguishable on the facts, in that it interpreted section 1157, not section 182. *Chagra,* a federal district court case from

another state, does not bind this court. Finally, *McDonald* was filed in 1984, *Alexander* in 1983, and *Chagra* in 1986, long before the petition was filed in October 1990. We conclude the petition was not timely filed.

## DISPOSITION

The order granting the petition for writ of habeas corpus is reversed. The petition for writ of habeas corpus filed in this court is denied.

McKinster, J., and McDaniel, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied August 12, 1992.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.