[No. E052040. Fourth Dist., Div. Two. Oct. 27, 2011.]

In re ROGER LYNN DOUGLAS on Habeas Corpus.

238

## COUNSEL

Michael A. Ramos, District Attorney, and Brent J. Schultze, Deputy District Attorney, for Appellant The People.

Julie Sullwold-Hernandez, under appointment by the Court of Appeal, for Defendant Roger Lynn Douglas.

OPINION

**HOLLENHORST, Acting P. J.**—The People appeal the grant of petition for writ of habeas corpus of Roger Lynn Douglas (Defendant) pursuant to Penal Code[1] section 1506. The People contend the trial court erred as a matter of law in granting the writ because the petition was untimely, barred by laches, and Defendant was not in actual or constructive custody on the challenged conviction. We agree and reverse.

## I. INTRODUCTION

On December 18, 1997, Defendant accepted a plea agreement. He pled no contest to one count of misdemeanor sexual battery. (§ 243.4, former subd. (d)(1).) Section 290, subdivision (b), requires anyone convicted under section 243.4 to register as a sex offender. Defendant currently has three cases, from 2008, 2009 and 2010, pending in San Bernardino Superior Court for failing to register as a sex offender.

In 2010, Defendant filed a petition for writ of habeas corpus in the San Bernardino Superior Court, asking that the court either strike the sex offender registration requirement or vacate his 1997 guilty plea. Defendant claims that prior to entering his plea, he was not informed that he was required to register as a sex offender. In September 2010, the trial court found that Defendant was not advised of the registration requirement. The court granted the writ and vacated the 1997 conviction.

The People appeal, contending that because Defendant did not file the petition in a timely manner and was not in actual or constructive custody on the challenged conviction, the petition was procedurally barred and should not have been granted. The People also contend that Defendant did not meet the standard for relief based on ineffective assistance of counsel. Because we find the petition was procedurally barred, we decline to consider the merits of the petition.

We conclude that the trial court erred in issuing the writ, as Defendant failed to pursue an appropriate legal remedy in a timely fashion.

## II. FACTS AND PROCEDURAL BACKGROUND

In early December 1997, in San Bernardino County, Defendant was arrested and charged with misdemeanor sexual battery (§ 243.4, former subd. (d)(1)) and misdemeanor resisting a peace officer (§ 148, subd. (a)).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant was represented by Attorney James Siegrist and a plea agreement was arranged. Defendant was to receive 30 days in jail, with credit for 20 days, and 36 months of probation. He testified that prior to entering his plea, he was not advised by his attorney or by the trial court that by pleading no contest and being convicted of the sexual battery charge he would be required to register as a sex offender. Section 290, subdivision (b), requires sex offender registration for anyone convicted of a violation of section 243.4.[2]

On December 18, 1997, Defendant pled nolo contendere to one count of misdemeanor sexual battery and the resisting a peace officer charge was dismissed. The hearing was not reported, and the minutes contain no reference to sex offender registration but do mention that Defendant understood the charges, the possible penalties, and the specific rights. Neither the preprinted plea bargain agreement nor the preprinted advisement of rights, waiver, and plea form contains any reference to sex offender registration.

On December 19, 1997, the day after his plea, Defendant signed a form advising him that he had to register as a sex offender. Prior to being released from jail, Defendant was also orally advised by a deputy that he had to register as a sex offender. Defendant claims he could not read the advisal form without his glasses, did not know what it was when he signed it, and did not believe the deputy's verbal advisal applied to him, as he understood his plea agreement did not contain a registration requirement.

In 2005, Defendant was arrested for failing to register as a sex offender, and he told the police he did not have to register because it was not a part of his plea agreement. The case was not prosecuted, but in 2008, Defendant was again arrested for failing to register as a sex offender in violation of section 290. On March 27, 2008, a criminal complaint was filed and Defendant received representation. When his attorney told him he needed to register, Defendant told him it was not a part of his plea agreement, and on May 8, 2008, Defendant filed a motion to withdraw his December 18, 1997, guilty plea. In 2009 and 2010, Defendant was again charged with failure to register as a sex offender.

Trials for the 2008, 2009, and 2010 failure to register charges were still pending on March 23, 2010, when Defendant filed a petition for writ of habeas corpus asking the court to either strike the registration requirement or vacate the 1997 plea and conviction. The trial court held an evidentiary hearing, in which Defendant and Deputy William Champin, the arresting officer on Defendant's 1997 charge, testified. Deputy Champin did not

---

[2] This requirement was also true in 1997 but was embodied in section 290, subdivision (a). (Stats. 1994, ch. 863, § 1.1, pp. 4277–4278.)

remember Defendant but vaguely recalled the incident involving Defendant's arrest in 1997. Defendant's attorney from 1997, James Siegrist, did not testify, as he is living in Portugal, but he stated in an affidavit that he does not remember Defendant or his case specifically.

The trial court found that Defendant was on notice the day after his plea when he signed the sex offender registration form but granted the writ of habeas corpus on the basis of lack of evidence that Defendant had been properly advised of the registration requirement at the time of his plea.

## III. DISCUSSION

### A. Defendant's Petition Is Untimely and Barred by Laches

#### 1. Standard of Review

In an appeal from an order granting a petition for habeas corpus after an evidentiary hearing, basic principles of appellate review apply, and thus, questions of fact and questions of law are reviewed under different standards. (*In re Pratt* (1999) 69 Cal.App.4th 1294, 1314 [82 Cal.Rptr.2d 260].) The trial court conducted an evidentiary hearing and found insufficient evidence to determine that Defendant had been properly advised of the registration requirement prior to entering his plea, but that Defendant was on notice regarding the registration requirement on December 19, 1997, the day after his plea was entered. These findings of fact will be accorded due deference under the substantial evidence standard. (*In re Collins* (2001) 86 Cal.App.4th 1176, 1181 [104 Cal.Rptr.2d 108].) However, "[t]his court . . . independently reviews questions of law, such as the selection of the controlling rule." (*Ibid.*) Mixed questions of law and fact are reviewed under the clearly erroneous standard if the inquiry is predominantly factual, but are reviewed de novo if the application of law to fact is predominantly legal. (*Ibid.*)

#### 2. Analysis

■ The People argue that Defendant's writ was issued in error because the petition was not timely. For noncapital cases in California, there is no express time window in which a petitioner must seek habeas corpus relief. (*In re Huddleston* (1969) 71 Cal.2d 1031, 1034 [80 Cal.Rptr. 595, 458 P.2d 507].) Rather, the general rule is that the petition must be filed "as promptly as the circumstances allow . . . ." (*In re Clark* (1993) 5 Cal.4th 750, 765, fn. 5 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*).) An untimely petition for writ of habeas corpus may still be considered if the delay is justified by the petitioner, who bears the burden of demonstrating either: "(i) absence of substantial delay, (ii) good cause for the delay, or (iii) that the claim falls

within an exception to the bar of untimeliness." (*In re Robbins* (1998) 18 Cal.4th 770, 780 [77 Cal.Rptr.2d 153, 959 P.2d 311] (*Robbins*).)

█ Defendant entered his plea on December 18, 1997, but did not file the petition for writ of habeas corpus until 2010, and is unable to demonstrate the absence of substantial delay. "Substantial delay is measured from the time the petitioner or his . . . counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." (*Robbins, supra*, 18 Cal.4th at p. 780.) This can be as early as the date of conviction. (*Clark, supra*, 5 Cal.4th at p. 765, fn. 5.) The trial court found that Defendant did not know of the registration requirement *at the time he entered his plea* on December 18, 1997. However, the trial court also found that the very next day, December 19, 1997, when Defendant signed the sex offender registration notice, he "may have disagreed with [the registration requirement], but he was certainly on notice." Additionally, Defendant received oral notification of the registration requirement after being released from jail. Thus, Defendant likely knew of the registration requirement on the day after he entered his plea, December 19, 1997, and if he truly did not, as he claims, he *should have known*.

Defendant argues that timeliness should be measured from the time counsel became aware of the legal basis for the claim in 2008, citing *In re Crockett* (2008) 159 Cal.App.4th 751 [71 Cal.Rptr.3d 632] (*Crockett*). In *Crockett*, a Texas juvenile court convicted the petitioner of sexual abuse in 2001 and required him to register as a sex offender. (*Id.* at p. 755.) The petitioner then moved to California and in 2004 was convicted of a felony charge for failing to register. (*Id.* at pp. 755–756.) The petitioner filed a petition for writ of habeas corpus in September 2006, which was denied, and he filed an appellate petition in May 2007. (*Id.* at pp. 756–757.) The appellate petition was deemed timely because the legal claim regarding section 290's applicability to juveniles was not apparent until new case law was published in August 2006. (159 Cal.App.4th at pp. 757–758.) Thus, timeliness was not measured from 2001 (the time at which the petitioner became aware of the registration requirement), but from 2006 (when the new case law giving rise to the legal claim was published). Defendant argues the timeliness analysis from *Crockett* compels us to measure timeliness in the present case from 2008 (when counsel became aware of the legal basis of the claim), and not from 1997 (when Defendant became aware of his registration requirement). We disagree and decline to do so.

Controlling case law clearly states the trigger for timeliness is when the petitioner or his counsel knew or reasonably should have known the legal basis of the claim and facts in support of that claim. (*Robbins, supra*, 18 Cal.4th at p. 780.) *Crockett* is not contradictory. In *Crockett*, the legal basis

for the petitioner's claim did not exist in 2001, when the petitioner learned of the registration requirement, because the jurisdictional argument did not become apparent until *In re Derrick B.* (2006) 39 Cal.4th 535 [47 Cal.Rptr.3d 13, 139 P.3d 485] was published in 2006. (*Crockett, supra,* 159 Cal.App.4th at p. 758.) Thus, 2006 was the *earliest* the petitioner or his counsel in *Crockett* knew or reasonably should have known the legal basis of the claim. In contrast, while Defendant in this case may not have known the precise legal basis for his claim until he consulted with counsel in 2008, the earliest he or his counsel reasonably should have known of the issue was December 19, 1997, upon receiving verbal notification of the registration requirement and signing the advisal form.

■ A petition that has been substantially delayed may nevertheless be considered on the merits if the petitioner can establish good cause for the delay, such as investigation of a potentially meritorious claim, or to avoid the piecemeal presentation of claims. (*Robbins, supra,* 18 Cal.4th at p. 780.) The only excuse Defendant offers to explain the delay between conviction in 1997 and this petition in 2010 is his mistaken belief regarding the registration requirement. California law does not condone willful ignorance: ■ "A petitioner will be expected to demonstrate due diligence in pursuing potential claims. If a petitioner had reason to suspect that a basis for habeas corpus relief was available, but did nothing to promptly confirm those suspicions, that failure must be justified." (*Clark, supra,* 5 Cal.4th at p. 775.)

■ Upon signing the advisal form and receiving verbal notification of the registration requirement on December 19, 1997, Defendant should have suspected a basis for habeas corpus relief. Instead of diligently pursuing legal relief, Defendant deliberately chose not to seek counsel and willfully avoided registering as a sex offender, relying on his unreasonable mistaken belief. In *Robbins,* the California Supreme Court explicitly included an objective, reasonable person standard when defining how to measure the trigger for timeliness for habeas corpus purposes.[3] (*Robbins, supra,* 18 Cal.4th at pp. 780–781.) Mistaken belief is thus insufficient to explain the lengthy delay in filing a petition for writ of habeas corpus.

■ A petition for writ of habeas corpus that is substantially delayed without good cause is considered untimely and will not be considered on the merits unless the defects alleged by the petitioner constitute a "fundamental miscarriage of justice" (*Clark, supra,* 5 Cal.4th at p. 759), which has previously been defined as one of the following: "(1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent

---

[3] "Substantial delay is measured from the time the petitioner or his or her counsel knew, or *reasonably should have known,* of the information offered in support of the claim and the legal basis for the claim." (*In re Robbins, supra,* 18 Cal.4th at p. 780, italics added.)

the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which he was convicted; (3) that the death penalty was imposed [based on grossly misleading information and] that absent the error or omission no reasonable judge or jury would have imposed a sentence of death; or (4) that the petitioner was convicted under an invalid statute." (*Ibid.*) Defendant does not argue that a fundamental miscarriage of justice occurred in the present case, nor do we see evidence of any. We agree the original trial court erred when it failed to advise Defendant he was required to register as a sex offender. (*People v. McClellan* (1993) 6 Cal.4th 367, 376 [24 Cal.Rptr.2d 739, 862 P.2d 739]; *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086] (*Bunnell*).) On its own, this violation may entitle Defendant to seek relief.[4] ■ However, even constitutional error may be waived by unjustified or unexplained delay. (*People v. Miller* (1992) 6 Cal.App.4th 873, 881–882 [8 Cal.Rptr.2d 193] [Fourth Dist., Div. Two].) Though the trial court erred, Defendant was almost instantly aware of the error when he signed the registration advisal form and received verbal notification on December 19, 1997. Despite this notice, Defendant chose to take no action for over a decade, and has thus forfeited his right to contest the error. While we recognize there may be advisements and rights so fundamental that the application of forfeiture doctrine is inappropriate, here we find the application reasonable and warranted. Defendant's deliberate inactivity for over a decade forfeited his right to challenge the *Bunnell* error.

■ Moreover, unreasonable delay also bars consideration of a petition for writ of habeas corpus under the doctrine of laches. (*People v. Miller, supra*, 6 Cal.App.4th at pp. 881–882.) Application of the doctrine is appropriate where the delay is unreasonable and has prejudiced respondent. (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258].) As discussed above, we conclude the delay between when Defendant was on notice of the registration requirement in 1997 and the filing of his petition in 2010 is explained by nothing other than willful ignorance and is therefore unreasonable. Furthermore, we conclude that Defendant's unjustified delay resulted in prejudice to the People. Defendant argues that laches applies only to prejudice suffered with respect to responding to the petition, not to retrying Defendant, citing *Gratzer v. Mahoney* (9th Cir. 2005) 397 F.3d 686, 690 (*Gratzer*). In *Gratzer*, the Ninth Circuit found it irrelevant to the prejudice analysis that it would be impossible for the state to reprosecute the petitioner for a crime that occurred over 20 years ago. (*Ibid.*) However,

---

[4] Defendant is not entitled to relief from the trial court's error with respect to sex offender registration requirements unless he can establish that he was prejudiced by the error and would not have entered a guilty plea if he had been given proper advisement. (*People v. McClellan, supra*, 6 Cal.4th at p. 378.) We find the petition barred on procedural grounds, and so we decline to address the merits of whether or not Defendant was prejudiced in this regard.

*Gratzer* is a federal case and applied the federal standard used prior to the Antiterrorism and Effective Death Penalty Act of 1996 (28 U.S.C. § 2244), and therefore is neither current nor controlling. We decline to adopt the Ninth Circuit standard and instead apply the broader conception of laches used in California, which is closely related to the timeliness requirement, and thus "reflects recognition that a substantial delay will prejudice the respondent's ability to answer the petition, respects the importance of finality of judgments to the state, and recognizes the difficulty of retrial in the event that a judgment is set aside on habeas corpus many years after the conviction." (*Clark, supra*, 5 Cal.4th at p. 787.) Here, the People have been prejudiced both with regard to retrying Defendant and to responding to issues raised in Defendant's petition.

The Supreme Court has recognized that "when a habeas petitioner succeeds in obtaining a new trial, the ' "erosion of memory" and "dispersion of witnesses" that occur with the passage of time,' [citation], prejudice the government and diminish the chances of a reliable criminal adjudication." (*McCleskey v. Zant* (1991) 499 U.S. 467, 491 [113 L.Ed.2d 517, 111 S.Ct. 1454].) In the present case, Deputy Champin was the investigating officer in the first count, sexual battery, and the victim of the second count, resisting a peace officer. At the evidentiary hearing 13 years after the incident in question, Deputy Champin testified that he had no memory of Defendant and recalled the incident only vaguely. Defendant's contention that the People failed to obtain other witnesses does not change the fact that the People's case on retrial will be seriously harmed and prosecution of count two impossible without Deputy Champin's testimony. Similarly, Defendant's delay has resulted in prejudice to the People in their ability to respond to the issues raised in the petition. According to Defendant, neither the trial court nor his attorney advised him of the registration requirement. However, his attorney now resides in Portugal and has no memory of either Defendant or his case, rendering any investigation into ineffective assistance of counsel impossible.

■ Defendant knew, or at the very least should have known, that he was required to register as a sex offender as of December 19, 1997, yet he failed to consult with counsel until forced to do so in 2008, and he did not file a petition until 2010. Thus, we find the substantial delay unjustified and the petition for writ of habeas corpus untimely and barred by laches.

B. *Defendant Is Not in Constructive Custody*

■ Section 1473, subdivision (a) states: "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." Traditionally, a writ of habeas corpus applied to those

under actual physical restraint; however, decisional law has expanded the scope of the writ to apply to those in constructive custody situations and today may apply to those on parole (*In re Jones* (1962) 57 Cal.2d 860, 861, fn. 1 [22 Cal.Rptr. 478, 372 P.2d 310]), probation (*In re Osslo* (1958) 51 Cal.2d 371, 376 [334 P.2d 1]), bail (*In re Petersen* (1958) 51 Cal.2d 177, 181–182 [331 P.2d 24]), or sentenced prisoners released on their own recognizance pending hearing on the merits of their petition (*In re Smiley* (1967) 66 Cal.2d 606, 613 [58 Cal.Rptr. 579, 427 P.2d 179]). Without actual or constructive custody, courts have no authority to grant relief. (*People v. Villa* (2009) 45 Cal.4th 1063, 1069–1070 [90 Cal.Rptr.3d 344, 202 P.3d 427]; *In re Stier* (2007) 152 Cal.App.4th 63, 82 [61 Cal.Rptr.3d 181] (*Stier*); *In re Wessley W.* (1981) 125 Cal.App.3d 240, 246 [181 Cal.Rptr. 401].)

Sex offender registration requirements have repeatedly been expressly excluded from the expanded constructive custody definition. (*Resendiz v. Kovensky* (9th Cir. 2005) 416 F.3d 952, 959; *Stier, supra*, 152 Cal.App.4th at pp. 81–83; *People v. Picklesimer* (2010) 48 Cal.4th 330, 338–339 [106 Cal.Rptr.3d 239, 226 P.3d 348].) Rather, " '[t]he registration requirement is merely a collateral consequence of conviction that is "not [itself] sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." [Citation].' [Citations.]" (*Stier, supra*, at p. 83.) Even collateral consequences that may later form the basis of new criminal convictions are not themselves sufficient to constitute constructive custody for habeas corpus purposes. (*People v. Villa, supra*, 45 Cal.4th at p. 1070.) Courts have further explained that registration requirements do not establish constructive custody because, by themselves, they "do not impose a severe restraint on an individual's liberty." (*Resendiz v. Kovensky, supra*, 416 F.3d at p. 959.)

Defendant's case bears similarity to *Stier*, where the petitioner desired access to an expired conviction because he did not want to comply with the sex offender registration requirement. (*Stier, supra*, 152 Cal.App.4th at pp. 70–72.) The petitioner, a physician, was convicted of taking indecent liberties with a child in North Carolina in 2000 but had his probation transferred to California where he lived. (*Id.* at p. 70.) In 2002, the petitioner successfully completed probation in California but continued to register as a sex offender as required. (*Id.* at pp. 70–71.) In 2004, new legislation provided for the revocation of medical licenses of those required to register as sex offenders under section 290. (*Stier, supra*, at p. 71.) The petitioner filed a petition for writ of habeas corpus, alleging that "his liberty is 'unlawfully restrained' and he is subject to 'constructive custody' or may face 'criminal prosecution' unless his duty to register is terminated." (*Ibid.*) The trial court granted relief and the appellate court reversed, holding that the "speculative risk of future custody in the event [the petitioner] fails to register as a sex offender [does not] prove[] constructive custody as required in a habeas corpus action. [Citations.]" (*Id.* at pp. 82–83.)

Defendant concedes the mere registration requirement itself does not constitute constructive custody for habeas corpus purposes, but argues that his situation differs from that in *Stier*. Instead of merely being in threat of future custody, Defendant contends that because he was arrested, charged with failing to register in 2008, 2009, and 2010, and is now out on bail, he is currently in constructive custody. We disagree that Defendant is in constructive custody for the conviction under attack. California courts have previously determined that "once a defendant has been released and is no longer subject to parole or probation, he or she is no longer in constructive custody and [the] avenue [of petition for writ of habeas corpus] is foreclosed. [Citation.]" (*People v. Picklesimer, supra*, 48 Cal.4th at p. 339.) When Defendant's probation concluded in 2000, constructive custody ended and habeas corpus ceased to be the appropriate avenue by which to seek relief.

Defendant's argument that he is in constructive custody and should therefore have access to his expired conviction is unavailing because he is not currently in constructive custody for the conviction he wishes to attack. Instead, he is in constructive custody for the failure to register charges. Defendant is hopeful that we will choose to follow the Ninth Circuit's approach in *Zichko v. Idaho* (9th Cir. 2001) 247 F.3d 1015 (*Zichko*). In *Zichko*, the petitioner was convicted of raping his minor daughter in 1987. (*Id.* at p. 1017.) In 1997, one month before his 10-year sentence was set to expire, he filed a petition for habeas corpus. (*Id.* at pp. 1018–1019.) At the time he filed his petition, he was incarcerated for failing to register as a sex offender. (*Id.* at p. 1019.) The Ninth Circuit held that the petitioner was in constructive custody for the purposes of the federal habeas corpus statute because the expired conviction " '[was] a necessary predicate' to the failure to register charge. [Citation]." (*Ibid.*) *Zichko* may deal with similar facts to the case at hand, but we are not bound by the opinions of the lower federal courts and we decline to extend its holding here. (*People v. Cleveland* (2001) 25 Cal.4th 466, 480 [106 Cal.Rptr.2d 313, 21 P.3d 1225].) The end result of applying *Zichko* is that failure to register as a sex offender, resulting in subsequent arrest and charges, is rewarded with access to expired convictions.

Such a result is untenable and contrary to principles described in Supreme Court case law. In *Maleng v. Cook* (1989) 490 U.S. 488 [104 L.Ed.2d 540, 109 S.Ct. 1923] (*Maleng*), the court addressed the issue of an old conviction being used to enhance a later one. The petitioner was in custody on a later offense and filed a petition for writ of habeas corpus attacking an earlier, expired conviction because it had been used to enhance his sentence on the later offense. (*Id.* at pp. 489–490.) The Supreme Court stated: "We have never held, however, that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." (*Id.* at p. 491.) The Supreme Court then elaborated that "once the sentence imposed for a conviction has completely

expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." (*Id.* at p. 492.) In the present case, Defendant is in custody pursuant to his second offense (failing to register as a sex offender), not pursuant to his earlier offense (sexual battery). His detention and probation were fully complete as of 2000, and sex offender registration was a collateral consequence. For our purposes, it is of no import that the failure to comply with the requirements of the collateral consequence led to his current constructive custody.

The Supreme Court revisited the issue of custody and collateral attacks in *Daniels v. United States* (2001) 532 U.S. 374 [149 L.Ed.2d 590, 121 S.Ct. 1578] (*Daniels*) and *Lackawanna County District Attorney v. Coss* (2001) 532 U.S. 394 [149 L.Ed.2d 608, 121 S.Ct. 1567] (*Lackawanna*). In *Daniels*, the petitioner was convicted in 1994 of being a felon in possession of a firearm. (*Daniels, supra*, at p. 376.) While in custody for the 1994 conviction, he attempted to attack several of his old convictions, which had been used to enhance his current sentence. (*Id.* at pp. 376–377.) The court held that despite being in custody on a new conviction, the petitioner could not challenge his old convictions, reasoning that the "presumption of validity that attached to the prior conviction at the time of sentencing is conclusive . . . ." (*Id.* at p. 382.) *Lackawanna* similarly involved a prisoner challenging prior, expired convictions that had been used to enhance the sentence he was currently serving. (*Lackawanna, supra*, at pp. 398–399.) The court extended the holding in *Daniels* to cover federal habeas corpus petitions brought to challenge state convictions, noting the importance of finality of convictions and ease of administration. (*Lackawanna, supra*, at pp. 402–404.)

The principle underlying the Supreme Court decisions in *Maleng, Daniels*, and *Lackawanna* is that, for habeas corpus purposes, custody on a later case does not allow an earlier, expired conviction to be collaterally challenged, even if it is used to enhance a later case. Such collateral attacks on expired convictions amount to nothing more than "end run[s] around statutes of limitations and other procedural barriers that would preclude the movant from attacking the prior conviction directly." (*Daniels, supra*, 532 U.S. at p. 383.) Extending this principle to the case before us, we find that Defendant has not been in constructive custody for the 1997 conviction since his probation ended in 2000. Ignoring his legal obligation to register as a sex offender should not give him access to expired convictions. Even if we were to find that Defendant was in constructive custody for the purposes of a habeas corpus petition, Defendant defaulted on his obligation to seek a timely legal remedy and is thus not entitled to relief.

## IV. DISPOSITION

For the foregoing reasons, we reverse the judgment of the Superior Court vacating the 1997 conviction. Any litigation ordered dismissed as a consequence of the Superior Court's ruling is ordered reinstated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

Miller, J., and Codrington, J., concurred.

Defendant's petition for review by the Supreme Court was denied February 1, 2012, S198552.